IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          Case No. 18-10076-JWB

SANTOS LARIOS-AJUALAT,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to dismiss the indictment. (Doc. 10.) The motion has been fully briefed. (Docs. 11, 12.) Defendant has also filed notice of an additional authority. (Doc. 13.) For the reasons stated herein, the motion is DENIED.

**I. Background**

The indictment charges in substance that on December 29, 2017, Defendant was a citizen of Guatemala and was not a citizen or national of the United States, that he had previously been removed or deported, and he was found in the United States after having voluntarily re-entered the United States without the appropriate permission, in violation of 8 U.S.C. § 1326(a) and (b). (Doc. 1.)

Defendant moves to dismiss the indictment based in part on the Supreme Court's ruling in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). In brief, Defendant contends the "notice to appear" that triggered his 2008 removal proceeding was defective, as explained by *Pereira*, because it failed to specify the date and time of the removal proceeding. He argues this means the immigration judge lacked jurisdiction and that the removal proceedings were void and in violation of due process, such that an essential element of the alleged § 1326 offense cannot be established.

In response, the government argues that *Pereira* has no application here because, unlike the alien in *Pereira*, Defendant appeared at his removal hearing. (Doc. 11 at 3; 11-6 at 1.) The government argues that any deficiency in the notice to appear is immaterial, and that the 2008 removal is legally valid.

**II. Facts**

Neither party has requested a hearing in connection with the motion to dismiss the indictment. Both have attached exhibits to their briefs, the authenticity of which does not appear to be in dispute. For purposes of the motion, the court therefore accepts as uncontested the facts shown by the parties' exhibits.

On October 1, 2008, the United States Department of Homeland Security issued a Notice to Appear (Doc. 10-1) to Defendant. The notice alleged that Defendant was not a citizen or national of the United States; that he was a citizen of Guatemala; that he arrived in the United States near Nogales, Arizona, on or about October 15, 2002; and that he was not then admitted or paroled after inspection by an Immigration Officer. It charged that Defendant was subject to removal under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA).[1] (*Id*. at 2.) The notice ordered Defendant to appear before an immigration judge at an address in Omaha, Nebraska, "on a date to be set at a time to be set" to show why he should not be removed from the United States. (*Id.*)

The form Notice to Appear (Form I-862 (Rev. 08/01/07)) included a statement advising Defendant of various rights, including the right to be represented by counsel at the removal proceeding and, unless requested otherwise, to not have the hearing earlier than ten days from the date of the notice to allow sufficient time to secure counsel. (*Id.* at 3.) It also informed Defendant

---

[1] 8 U.S.C. § 1182(a)(6)(i) (an alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible). *See also* 8 U.S.C. § 1227 (any alien in the United States shall upon order of the Attorney General be removed if the alien, at the time of entry, was within the class of inadmissible aliens).

that at the hearing he would have the opportunity to admit or deny the allegations, to present evidence, to object to government evidence and cross-examine government witnesses, and to appeal an adverse decision by the immigration judge. It stated that the immigration judge would advise him of any relief from removal for which Defendant may appear eligible. (*Id.*)

The notice included a section entitled "Request for Prompt Hearing," signed by Defendant, requesting an immediate hearing and waiving the right to a ten-day period prior to appearing before an immigration judge. A certificate of service signed by Defendant and an immigration enforcement agent stated that the notice was personally served on Defendant on October 1, 2008, and that oral notice of the time [still unspecified] and place of the hearing and of the consequences of failure to appear was provided to Defendant in Spanish. (*Id.*)

Additional exhibits cited by the government show that Defendant was also served with a warrant for arrest on October 1, 2008, and an immigration judge determined that Defendant would be released on a $10,000 bond pending a final determination in the case. (Doc. 11-3.) Defendant signed a provision acknowledging receipt of the notice and requesting a redetermination of the custody decision. The documents provided do not show any such redetermination.

An order directing that Defendant be removed from the United States to Guatemala was orally entered by an immigration judge at a "master" removal hearing on October 29, 2008, and was reflected in a form memorandum.[2] (Doc. 11-5.) The memorandum indicates that an appeal was "waived." An "Attorney Worksheet" from the October 29, 2008, hearing indicates Defendant appeared "pro-se at detained master and admits all allegations" in the Notice to Appear, that he was ordered removed to Guatemala, that there was no appeal, and this was a final order. (Doc. 11-6.) A warrant of removal dated November 10, 2008, commanded any immigration officer to take

---

[2] The memorandum states that it is "solely for the convenience of the parties" and that if the proceedings should be appealed or reopened, "the oral decision will become the official opinion in this case." (Doc. 11-5.)

Defendant into custody and remove him from the United States based upon the immigration judge's final order, and further indicates Defendant was deported on November 20, 2008. (Doc. 11-7.)

**III. Summary of *Pereira v. Sessions*, 138 S. Ct. 2105 (2018)**. The background to *Pereira* is as follows. Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), aliens who are subject to removal proceedings may be eligible for cancellation of removal if, among other things, they have been physically present in the United States for a continuous period of ten years or more. 8 U.S.C. § 1229b(b)(1)(A). But under this so-called "stop-time rule," the period of continuous presence is deemed to end when the alien "is served a notice to appear under section 1229(a)." *Id.* § 1229b(d)(1).

Section 1229(a) provides that the government will serve the alien a written "notice to appear" specifying, among other things, the time and place at which removal proceedings will be held. *Id.* § 1229(a)(1)(G)(i). In recent years, the Department of Homeland Security has issued notices that do not specify a time or date, but state that the initial removal proceeding will take place on a date and time "to be set." Pereira, a citizen of Brazil who overstayed his visa, was served such a notice. *Pereira*, 138 S. Ct. at 2112. About a year later, the immigration court mailed Pereira a more specific notice setting the date and time of the initial hearing, but the notice was sent to the wrong address.[3] As a result, Pereira failed to appear and the immigration court ordered him removed in absentia. Several years later, Pereira was arrested and the immigration court reopened the removal proceeding. When Pereira applied for cancellation of removal and argued he had been continuously present in the United States for more than ten years, the immigration

---

[3] The Department adopted a regulation stating that in removal proceedings, the Immigration Service shall provide the date, place, and time of the removal proceeding in the notice to appear "where practicable." If that information is not contained in the notice to appear, the immigration court shall be responsible for scheduling the initial removal hearing and for providing notice to the government and to the alien of the date, place, and time. 8 C.F.R. § 1003.18(b).

court denied his application on the grounds that the notice to appear had interrupted the ten-year period under the stop-time rule. *Id*.

The Supreme Court held that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under § 1229(a)' and therefore does not trigger the stop-time rule." *Pereira*, 138 S. Ct. at 2110. The Court relied on the definitional nature of § 1229(a), which makes clear the notice to appear contemplated in that provision is one that contains specific information, including the date and time of the removal proceeding. The Court observed that § 1229(a)(2), which addresses *changes* in the time and place of removal proceedings, allows the government to give notice specifying a new time or place of the proceedings, which presupposes that the government has already specified an initial time and place. The Court further pointed out that § 1229(b)(1):

> gives a noncitizen "the opportunity to secure counsel before the first [removal] hearing date" by mandating that such "hearing date shall not be scheduled earlier than 10 days after the service of the notice to appear." For § 1229(b)(1) to have any meaning, the "notice to appear" must specify the time and place that the noncitizen, and his counsel, must appear at the removal hearing.

*Id.* at 2114-15. Otherwise, the government could give an initial notice of a hearing "to be set" and then, one day before the hearing, specify the date and time, and thereby deprive the noncitizen of a meaningful opportunity to obtain and have prepared counsel. *Id.* at 2115.

**IV**. **Recent § 1326 Decisions Citing *Pereira*.**

Defendant cites *United States v. Virgen-Ponce*, 320 F. Supp.3d 1164, 2018 WL 3655166 (E.D. Wash. July 26, 2018) for the proposition that a notice to appear that does not satisfy *Pereira* is null and void and precludes use of the resulting removal order in a § 1326 prosecution. In *Virgen-Ponce*, the court noted that 8 C.F.R. § 1003.14(a) provides in part that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." The regulations further state that the term "[c]harging

5

document means the written instrument which initiates a proceeding before an Immigration Judge," and "these documents include a Notice to Appear…." *Id.* § 1003.13. *Virgen-Ponce* found this means a charging document must include a proper notice to appear and, absent such a document, the immigration court lacks jurisdiction to proceed. *Virgen-Ponce* further held that the defendant in that case "need not show that he exhausted administrative remedies because the immigration court proceedings were void." Defendant also cites *United States v. Pedroza-Rocha*, No. 18-CR-1286 (W.D. Tex. Sep. 21, 2018), which relied on *Virgen-Ponce* and which reached the same conclusion. (Doc. 13-1.) *See also United States v. Zapata-Cortinas,* No. 18-CR-00343-OLG, 2018 WL 4770868 (W.D. Tex. Oct. 2, 2018) (same).

In addition to the three cases cited above, there are three recent decisions distinguishing *Pereira* and denying a motion to dismiss a § 1326(a) indictment where the defendant received actual notice of the removal hearing and/or was present at that hearing. One decision, *United States v. Morales-Hernandez*, No. 18-00365-TUC, 2018 WL 4492377, *1 (D. Az. Sept. 18, 2018), is a one-paragraph opinion finding *Pereira* distinguishable because the defendant in the instant case "was present and participated in the proceedings resulting in his removal" such that the defective initial notice to appear "is of no moment." Another decision, *United States v. Ibarra-Rodriguez*, No. CR-18-190-M, 2018 WL 4608503, at *2–3 (W.D. Okla. Sept. 25, 2018), found the initial notice to appear was defective under *Pereira* but "such statutory defect does not automatically make the removal order fundamentally unfair. Courts have held that a defective notice to appear may be cured by serving a subsequent notice of hearing. *See Popa v. Holder*, 571 F.3d 890, 895-96 (9th Cir. 2009) (collecting cases)." *Ibarra-Rodriguez*, 2018 WL 4608503, at *2. The court noted that under 18 U.S.C. § 1326(d), a defendant may only challenge the validity of an underlying deportation order if he makes certain showings, including that the entry of the order was

"fundamentally unfair." The *Ibarra-Rodriguez* court pointed out that after the initial defective notice to appear, the defendant was personally served with specific notice of the hearings and in fact appeared at the hearings, such that "the initial defective notice was cured," and there was no deprivation of due process or fundamental unfairness. *Id*. A third recent decision reached a similar result. *United States v. Munoz-Alvarado*, No. CR-18-171-C, 2018 WL 4762134, *1 (W.D. Okla. Oct. 2, 2018) (finding defendant's appearance at his hearing and his waiver of further notice "overcome[s] the deficiencies noted by the Supreme Court in *Pereira"*).

**V. Discussion**

The starting point for analyzing a challenge to a deportation order in a § 1326 prosecution must be § 1326(d). As the Tenth Circuit noted, Congress has imposed specific limitations on an alien's right to collaterally attack an underlying deportation order on a charge of illegal reentry:

> To collaterally attack a deportation order, an alien must demonstrate that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). The defendant bears the burden of proof.

*United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005) (citations omitted.) Because the requirements of § 1326(d) are in the conjunctive, a defendant must satisfy all three to prevail. *See United States v. Lopez-Collazo*, 824 F.3d 453, 458 (5th Cir. 2016).

Section 1326(d) was Congress's response to *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987). In *Mendoza-Lopez*, the Supreme Court examined the prior version of § 1326 and acknowledged that Congress did not intend to permit *any* challenge to the validity of an underlying deportation order in a § 1326 proceeding. *Id*. at 837. But where an administrative determination plays a critical role in a criminal sanction, the Court said, due process requires that "there must be *some* meaningful review of the administrative proceeding." *Id.* at 837-38 (emphasis in original)

7

(citations omitted). This means "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to conclusively establish an element of a criminal offense." *Id*. at 838. "Depriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense." *Id*. at 839. After setting forth that principle, the Supreme Court turned to whether a deprivation of judicial review had occurred, and concluded that it did:

> If the violation of respondents' rights that took place in this case amounted to a complete deprivation of judicial review of the determination, that determination may not be used to enhance the penalty for an unlawful entry under § 1326. We think that it did. The Immigration Judge permitted waivers of the right to appeal that were not the result of considered judgments by respondents, and failed to advise respondents properly of their eligibility to apply for suspension of deportation. Because the waivers of their rights to appeal were not considered or intelligent, respondents were deprived of judicial review of their deportation proceeding. The Government may not, therefore, rely on those orders as reliable proof of an element of a criminal offense.

*Id.* at 840.

Defendant's notice to appear was clearly defective under *Pereira*, as it did not include a specific date and time to appear. *Pereira*, 138 S. Ct. at 2110 ("A notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a)' and therefore does not trigger the stop-time rule" of § 1229b(d)(1)(A)). But that fact alone does not satisfy § 1326(d). The first prerequisite for collateral review of a removal order requires Defendant to show that he exhausted any available administrative remedies "that may have been available to seek relief against the order." 8 U.S.C. § 1326(d)(1). Federal regulations provide that the removal order of an immigration judge may be appealed to the Board of

8

Immigration Appeals. 8 C.F.R. § 1003.3(b). The undisputed facts before the court are that Defendant waived his right to appeal the immigration judge's 2008 order. "An alien who knowingly waives the right to appeal an immigration judge's order of deportation fails to exhaust administrative remedies under § 1326(d)(1)." *United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005). Defendant does not allege that his waiver was not knowingly entered; he therefore fails to show an essential element of collateral review under § 1326(d).

The second prerequisite for collateral review requires Defendant to show that the deportation proceedings "improperly deprived [him] of the opportunity for judicial review." *Id.*, § 1326(d)(2). In *Mendoza-Lopez*, the alien was deprived of the chance for judicial review by faulty advice from the immigration judge, which led the alien to make an unknowing waiver of his right to appeal. In this case, Defendant does not argue he was deprived of the opportunity for judicial review; he contends the immigration court's asserted lack of jurisdiction excuses him from making that showing (as well as from the obligation to exhaust administrative remedies.) Such reasoning, however, is contrary to the express limitations adopted by Congress in § 1326(d) and contrary to the Supreme Court's explanation in *Mendoza-Lopez* of when due process requires allowing collateral review in a § 1326 prosecution. The standard is not whether the deportation order was valid, but whether Defendant was deprived of the opportunity to have it reviewed by an Article III court.

A review of relevant statutes shows that Defendant could have obtained judicial review of his removal order. Congress has specified that general removal orders (with exceptions not applicable here) are subject to judicial review under Title 28, Chapter 158, with a petition for review filed with the appropriate court of appeals being the exclusive means for judicial review of an order of removal. 8 U.S.C. § 1252(a)(1). Upon the filing of a petition for review, the court of

appeals has exclusive jurisdiction to enter a judgment "determining the validity of, and enjoining, setting aside, or suspending … the order of the agency." 28 U.S.C. § 2349(a). Although the scope of judicial review is limited, judicial review "of all questions of law and fact, including interpretation of constitutional and statutory provisions, arising from any … proceeding brought to remove an alien from the United States … shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). And except as otherwise provided in the same section, "no court shall have jurisdiction … by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact." *Id*. Finally, Congress mandated that a court may review a final order of removal only if the alien "has exhausted all administrative remedies available…." *Id.* § 1252(d)(1). The governing statutes thus provided Defendant with the opportunity for obtaining judicial review of his removal order.

Some courts have held a defendant can establish the first two prongs of § 1326(d) by showing "that he was denied judicial review of his removal proceeding in violation of due process" or that "immigration officials in the underlying removal proceeding violated a regulation designed to protect an alien's right to judicial review." *United States v. Gomez*, 757 F.3d 885, 892 (9th Cir. 2014) (citations omitted.) Defendant makes no such showing here. The provisions above indicate administrative remedies and judicial review were available to Defendant at the time of his removal hearing, but he chose to waive the opportunity to challenge the lawfulness of the removal order. Again, Defendant does not argue that his waiver was not knowingly made. Under the circumstances, Defendant has made no showing that the 2008 deportation proceeding "improperly deprived [him] of the opportunity for judicial review" as required by § 1326(d)(2).

The third prerequisite of § 1326(d) requires Defendant to show that entry of his October 2008 removal order was fundamentally unfair. "An underlying order is 'fundamentally unfair' if

(1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Vargas-Ortiz*, 667 F. App'x 699, 700 (10th Cir. 2016) (quoting *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014)); *United States v. Guardado-Diaz*, ___F. App'x ___, 2018 WL 2688260 (4th Cir. 2018) (same). Due process requires that an alien who faces removal be provided notice of the charges against him, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard. *See United States v. El Shami*, 434 F.3d 659, 665 (4th Cir. 2005) (citing *United States v. Torres*, 383 F.3d 92, 104 (3rd Cir. 2004)). In other words, due process guarantees "an opportunity to be heard at a meaningful time in a meaningful manner." *Salgado-Toribio v. Holder*, 713 F.3d 1267, 1271 (10th Cir. 2013) (citation omitted). To demonstrate prejudice, Defendant must demonstrate "a reasonable likelihood that, but for the errors complained of, he would not have been deported." *United States v. Aguirre-Tello*, 353 F.3d 1199, 1208 (10th Cir. 2004) (citation omitted).

As the Supreme Court indicated in *Pereira*, the failure of a notice to appear to specify the date and time of a removal hearing could prejudice an alien by causing him to miss a hearing, by depriving him of the time or incentive to find counsel, or by depriving the alien (or counsel) of time to prepare for the hearing. *Pereira*, 138 S. Ct. at 2115 (without informing alien of the time of the hearing "the Government cannot reasonably expect the noncitizen to appear for his removal proceeding.") Defendant does not dispute that, unlike the alien in *Pereira*, he was in fact present at the removal hearing. He does not allege or argue that he was not provided adequate notice of the charge against him, that he was not given actual notice of the hearing, that he was not properly informed of his rights at the hearing, that he did not have an adequate opportunity to prepare for or participate in the hearing, that his waiver of his right to counsel was made unknowingly, or that

11

his waiver of his right to appeal the immigration judge's order of removal was made unknowingly. Nor does he claim that he was not subject to deportation under the standards of the INA or that he would have obtained relief from deportation were it not for the defective notice. Absent from the motion is any suggestion that he suffered prejudice from the lack of notice, which means Defendant's collateral challenge to the 2008 removal order is also barred by § 1326(d)(3). *See Aguirre-Tello*, 353 F.3d at 1207 ("to enable us to reach the ultimate conclusion that the deportation proceeding was fundamentally unfair, [defendant] would still have to demonstrate that any errors that occurred prejudiced him.") As in *Ibarra-Rodriguez*, *supra*, any prejudice from the notice's failure to specify the date and time of the hearing was harmless because Defendant was in fact able to attend and adequately participate in the removal hearing. *Cf. Guamanrrigra v. Holder*, 670 F.3d 404, 409 (2d Cir. 2012) (service of a notice that does not specify date and time of a hearing, followed by service of a separate notice specifying those matters, satisfies the notice requirements of 8 U.S.C. § 1229(a)(1)); *United States v. Nicki*, 427 F.3d 1286, 1296 (10th Cir. 2005) (citing *Long v. Bd. of Governors of the Fed. Reserve Sys.*, 117 F.3d 1145, 1158 (10th Cir. 1997) ("To establish a due process violation, an individual must show he or she has sustained prejudice as a result of the allegedly insufficient notice.")).

Defendant relies on *Virgen-Ponce* and *Pedroza-Rocha* and their rationale that the lack of a proper notice to appear deprives the immigration court of "subject-matter jurisdiction," a defect that "cannot be waived" and which results in prejudice because deportation "would not have happened but for the immigration court's error in ordering [the alien] deported when the court lacked the authority to do so." *Pedroza-Rocha*, slip op. at 10. *See also Zapata-Cortinas,* 2018 WL 4770868, *4-5. The court finds these rulings unpersuasive. Even assuming the immigration court

lacked "subject-matter jurisdiction"[4] or acted beyond its statutory authority by ordering Defendant's removal in 2008, that still would not exempt the removal order from the requirements of § 1326(d). Section 1326(d) prohibits an alien from "challeng[ing] the validity of the deportation order" unless, among other things, the alien demonstrates that the deportation proceedings "improperly deprived [him] of the opportunity for judicial review."[5] In the instant case, Defendant could have appealed the removal order and could have asked an immigration court or the circuit court of appeals to declare the order void. He waived that opportunity. *Virgen-Ponce* and *Pedroza-Rocha* do not explain what authorizes a district court in such circumstances to set aside statutory limitations on the district court's authority to collaterally review a removal order.[6] To be sure, due

---

[4] The *Virgen-Ponce* line of cases relies on 8 C.F.R. § 1003.14(a) as showing that an immigration court is without subject-matter jurisdiction in the absence of a notice to appear that meets the requirements of 8 U.S.C. § 1229(a). The foregoing regulation states that "jurisdiction vests" and removal proceedings commence when a charging document is filed with the immigration court by the INS. Like the subject-matter jurisdiction of the federal courts, however, the immigration court's authority over a given subject matter is determined by federal statute - not by acts taken by INS or other Executive Branch agents - and Congress has specifically authorized immigration judges to conduct removal proceedings and to decide whether an alien is removable under the immigration laws. *Id.*, § 1229a(a) & (c). *Cf. Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982) (subject-matter jurisdiction is a constitutional and statutory requirement; no action of the parties can confer subject-matter jurisdiction.) The regulation cited above goes on to state that the charging document must include a certificate showing service on the opposing party. 8 C.F.R. § 1003.14(a). That requirement is analogous to service of process in federal court, and is an indication that the regulation is addressing the immigration court's acquisition of personal jurisdiction over the person for purposes of a removal proceeding. *See Compagnie des Bauxites,* 456 U.S. at 703 (personal jurisdiction protects an individual liberty interest; it requires that maintenance of the suit not offend traditional notions of fair play and substantial justice); *Oklahoma Radio Assocs. v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) ("service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served").
[5] In contrast to *Mendoza-Lopez*, in *Lewis v. United States*, 445 U.S. 55 (1980), the Supreme Court said Congress could prohibit a collateral challenge to a state court conviction used as a predicate felony for a charge of unlawful possession of a firearm by a convicted felon. The Court so held despite the state conviction having been "uncounseled and therefore obtained in violation of the Sixth and Fourteenth Amendment rights of the defendant." *See Mendoza-Lopez*, 481 U.S. at 840 (citing *Lewis*, 445 U.S. at 67.) The difference between these two cases turned on the *availability* of judicial review prior to the federal criminal proceeding. Whereas the defendant in *Lewis* had the opportunity to challenge his predicate conviction in a judicial forum before he obtained a firearm, the "fundamental procedural defects of the deportation hearing … rendered direct review of the Immigration Judge's determination unavailable" to the alien in *Mendoza-Lopez. Id.* at 841.
[6] These two decisions held that a defendant did not have to show exhaustion or a deprivation of judicial review because the removal order was "void," whereas *Zapata-Cortinas* found the § 1326(d) requirements were "satisfied" and the defendant "was deprived of an opportunity for meaningful judicial review." *Zapata-Cortinas,* 2018 WL 4770868, *5. The latter court did not explain how the defendant was deprived of judicial review. None of these decisions drew any distinction between judicially-created exhaustion requirements and those imposed by Congress. But the case cited by *Virgen-Ponce* as supporting excusal of the exhaustion requirement, *United Farm Workers of Am., AFL-CIO v. Arizona Agr. Employ. Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1982), noted that application of the exhaustion doctrine

process requires allowing judicial review in a § 1326 prosecution where a deportation proceeding "effectively eliminate[d] the right of the alien to obtain judicial review." *Mendoza-Lopez,* 481 U.S. at 839. But Defendant's right to obtain judicial review was not "eliminated" by defects in his removal proceeding; under the facts before the court he knowingly waived his right to obtain judicial review.

Congress made clear by adopting § 1326(d) that knowingly giving up the opportunity for judicial review in a removal proceeding precludes an alien from challenging the validity of the removal order in a § 1326 prosecution. The cases adopting the *Virgen-Ponce* reasoning nullify this limitation by declaring the removal order void for lack of subject-matter jurisdiction, and in doing so effectively ignore the limitations Congress has placed on their own jurisdiction. *See United States v. Adams-Orozco,* 607 F.3d 647, 652 (10th Cir. 2010) ("Where, as here, the statute's language is plain and satisfied, 'the sole function of the courts' can only be 'to reinforce it according to its terms.'") *Cf. Kern v. Sec. & Exch. Comm'n,* 724 F. App'x 687, 688 (10th Cir. 2018) ("a challenge to the agency's lack of jurisdiction does not extend our *appellate* jurisdiction to entertain an untimely petition for review.") In the instant case, Defendant has not shown that defects in his removal proceeding improperly deprived him of the opportunity for judicial review of his removal order. That failure precludes a collateral challenge to the order in this proceeding.

**IT IS THEREFORE ORDERED** this 15th day of October, 2018, that Defendant's motion to dismiss the indictment (Doc. 10) is DENIED.

___s/ John W. Broomes_____<br>
JOHN W. BROOMES<br>
UNITED STATES DISTRICT JUDGE

---

was within the court's discretion "[u]nless it is specifically required by statute." *Cf. McKart v. United States*, 395 U.S. 185, 206 (1969) (White, J. concurring) ("Undoubtedly, Congress could require such exhaustion as a prerequisite to judicial review … but Congress has not chosen to do so" in the Selective Service Act).